UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| MICHAEL A. HILBER,<br><br>            Plaintiff,<br><br>   v.<br><br>INTERNATIONAL LINING TECHNOLOGY,<br><br>            Defendant.<br>_____/ | No. C 12-00003 LB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>[Re: ECF No. 32] |

**I. INTRODUCTION**

Plaintiff Michael Hilber, who is proceeding *pro se*, sued his former employer, Defendant International Lining Technology ("ILT"), for employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. Complaint, ECF No. 1. Upon ILT's motion, the court dismissed Mr. Hilber's original complaint without prejudice. 5/18/2012 Order, ECF No. 24. Mr. Hilber filed a First Amended Complaint, and now ILT moves to dismiss this complaint, too. First Amended Complaint, ("FAC"), ECF No. 30; Second Motion, ECF No. 32. Upon consideration of ILT's motion and the applicable legal authorities, the court **GRANTS IN PART** and **DENIES IN PART** ILT's motion.[1]

---

[1] Pursuant to Civil Local Rule 7-1(b), the court finds this matter suitable for determination without oral argument and vacates the August 2, 2012 hearing.

UNITED STATES DISTRICT COURT
For the Northern District of California

## II.  BACKGROUND

As Mr. Hilber alleges in his First Amended Complaint, on May 6, 2008, ILT, "a construction contracting company that installs plastic lining material into earthen excavations," hired him out of the Laborers Local 139 Hall to perform work in Sonoma County, California.  FAC, ECF No. 30 at 2. He does not allege whether he was hired as a full-time, part-time, or temporary employee, but he does allege that was hired as a "Journeyman Laborer."  *Id*. at 5.[2]  He recalls that on the same day ILT also hired out of Laborers Local 139 Hall three Hispanic men and a Caucasian woman named "Mary."  *Id*. at 2.  He says that when he arrived at the worksite, all of the workers were Hispanic, except for "Mary" and him.  *Id*.

Mr. Hilber alleges that he was discriminated against while working for ILT because he is Caucasian and not Hispanic.[3]  He describes, in his words, the following allegedly discriminatory acts:

- He was "farmed out to the general contractor," and it "is unusual for a worker to be sent to help another contractor.  It was adverse action, in [his] view.  This caused [him] to be separated from

---

[2] The court notes, though, that Mr. Hilber also states that," [n]o, [ILT] did not promise [him] permanent employment, but there is more to this case and to [his] argument than simply that."  FAC, ECF No. 30 at 7.

[3] Mr. Hilber also alleges that ILT does not verify the eligibility of its workers.  *See* FAC, ECF No. 30 at 5-6.  Although he does not explicitly allege a claim in this regard, it appears he attempts to allege a violation of 8 U.S.C. § 1324a.  The Immigration Reform and Control Act makes it unlawful to knowingly hire or continue to employ an unauthorized alien, or to hire anyone for employment without complying with the work authorization verification system created by the statute.  8 U.S.C. § 1324a(a)(1)-(2).  This verification system requires that an employer examine certain documents that establish both identity and employment authorization for new employees. *See* 8 U.S.C. § 1324a(b).  Mr. Hilber's attempt to bring a claim for violation of this statute fails, however, because there is no private right action to allow him, rather than the government, to enforce it.  *See Chavez v. Freshpict Foods, Inc.*, 456 F.2d 890, 893 (10th Cir.), cert. denied, 409 U.S. 1042 (1972); *see also Effgen v. U.S.*, 31 Fed. Appx. 437, 2002 WL 460844, at *1 (9th Cir. 2002) (unpublished); *Garrett v. Land West Ventures, Inc.*, 2007 WL 2071615, at *2-3 (D. Colo. July 19, 2007).  Accordingly, to the extent that he attempts to bring a claim for violating this statute, and to the extent that ILT's motion moves to dismiss such a claim, ILT's motion is **GRANTED** and the claim is **DISMISSED WITH PREJUDICE**.

    the ILT work crew, and had him working under the direction of an individual who was not even employed by ILT. Also[,] when [he] was pulled off this task on the following day it was taken over by two workers who were employed by the general contractor, which seems to prove that [the] task was not even ILT's responsibility. [He] characterizes it as a discriminatory act because[,] were [he] a Spanish-only[-speaking] undocumented immigrant from Mexico[,] he would not have been sent to work at the direction of an English-speaking Caucasian with the general contractor. It seems clear to [him] that this was simply a case of some white guy with the general contractor wanting something, so [he] was sent to address it because he was the only white guy on the ILT crew." *Id*. at 3-4.

- He "was denied the opportunity to participate in liner leak testing, though two similarly situated Hispanic men who had come from Local 139 did perform the task . . . . [He] could not have been given this opportunity because the individual directing the task[—]where to place the leak testing apparatus and such things[—]was speaking only in Spanish and [he] would not have been able to understand. Also[,] [he] had asked that individual a question in English and got no response, so it would appear [that individual] did not speak English. [He] considers this different and adverse and discriminatory treatment compared to similarly situated Hispanics because [he] was denied opportunity to participate in this important task, and instead did more menial work." *Id*. at 4.

- "Another task, seaming of the material, was something [he] was given only brief exposure to. Another employee who spoke some English was showing [him] how to seam material and [he] performed this task for a while. When the job foreman, Alejandro, saw this he put an end to it and had [him] return to filling sandbags and picking up trash. At this point [he] saw Hispanic men, who[m] had come from Local 139 and who[m] [he] would consider similarly situated, continuing to help with the seaming of the material. So [he] considers this differential treatment similar to the leak testing matter." *Id*.

- "On Wednesday[,] May 7, 2008[,] [he] was sent home early and paid for only 4 hours. Though [he] wasn't the only one sent home early, [he] believes non-Hispanic Caucasians were

UNITED STATES DISTRICT COURT
For the Northern District of California

1 disproportionately impacted because both ["Mary"] and [he] were affected." This, he alleges,
2 "was discriminatory because it disproportionately impacted us non-Hispanics." *Id*.
3 • "There is good reason to believe that Saturday[,] May 10, 2008 was a regular work day, because
4 a substantial amount of lining material had been put down and we were told they worked that
5 day. [He] certainly did not work that day because on the preceding Friday the supervisor told
6 [him] to return on Monday. [He] argues this was also discriminatory for just the same reasoning
7 as was given above for the May 7, 2008 day we were sent home early. Neither ["Mary"] nor
8 [he] worked on Saturday[,] May 10, 2008[,] so [they] got fewer hours." *Id*. at 4-5.

Mr. Hilber also alleges that he and "Mary" was terminated on May 15, 2008, leaving the work crew with only Hispanic workers. *Id.* at 2-3. He was never told that there were any problems with his job performance. *Id*. at 5.

Mr. Hilber further alleges that ILT discriminated against him again by not hiring him to work on a second project. He alleges that

> [he] was not called back to perform work on the second pond at the Healdsburg Plant that was done at a later date . . . . On May 18, 2008 [he] was told, by the ILT supervisor, [that] it would be about 2 weeks before work would start on the second pond. [He] made periodic calls to the supervisor to check on this work, in addition to having given [the supervisor] his number. On one such call [that] [he] made to the supervisor on June 24, [he] just got hung up [on] instead of getting any useful information on what new estimated date for the work was. This could have been due to [the supervisor's unease] in ta[l]king to someone who only speak English[,] as [the supervisor] had been short with [him] in the past, at least in [his] opinion. So [he] considers this unreasonable; there should have been some information about an estimated date or when to check back.

*Id*.

As a result of the alleged discrimination, Mr. Hilber seeks "damages equal to [his] lost wages due to unemployment following termination, at least until finding new employment on October 13, 2008." *Id*. at 7. In other words, Mr. Hilber seeks lost wages for the 151-day period between May 15, 2008 and October 13, 2008. Alternatively, Mr. Hilber seeks "lost wages due to not being called back to work on the second pond[,] which would be 6 days of lost wages according to the EEOC case file . . . ." *Id*. In addition, Mr. Hilber seeks "4 hours of lost wages for May 7, 2008 for being given only a half day [of] work instead of a full day" and "8 hours lost wages for May 10, 2008 for

not being given the opportunity to work that day." *Id*. Finally, Mr. Hilber also requests unspecified "benefits associated with any lost wages that might be found owed and any other compensatory or punitive damages that might be allowed under Title VII." *Id*.

Mr. Hilber filed his employment discrimination complaint in this court on January 3, 2012. *Id*. ILT then filed a motion to dismiss it on March 19, 2012. First Motion, ECF No. 10.[4] Mr. Hilber filed an untimely opposition and declaration on May 7, 2012, First Opposition and Declaration, ECF No. 17, and ILT filed a reply on May 14, 2012, First Reply, ECF No. 19. On May 18, 2012, the court granted ILT's motion and allowed Mr. Hilber the opportunity to file an amended complaint. 5/18/2012 Order, ECF No. 24.

Mr. Hilber filed his First Amended Complaint on June 4, 2012. FAC, ECF No. 30. ILT filed its motion to dismiss it on June 15, 2012. Second Motion, ECF No. 32. Mr. Hilber filed an opposition, Second Opposition, ECF No. 33, and ILT filed a reply, Second Reply, ECF No. 34.

### III. LEGAL STANDARD

A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 557.). "While a complaint

---

[4] Throughout its motion to dismiss the original complaint, ILT referred to Mr. Hilber's discrimination claim as one for "reverse discrimination." *See generally* First Motion, ECF No. 10. The adjective "reverse" is unnecessary. *See Bass v. Bd. of County Comm'rs, Orange County, Fla.*, 256 F.3d 1095, 1102-03 (11th Cir. 2001) ("Sometimes this type of claim, where a white employee alleges to be the victim of discrimination, is referred to as a 'reverse discrimination' claim. Whatever the rhetorical effect of that phrase in the ongoing public debate over affirmative action may be, it has no place in the legal analysis of the alleged governmental action before us. Discrimination is discrimination no matter what the race, color, religion, sex, or national origin of the victim.") (citing *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 280, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976)).

1  attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's
2  obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and
3  conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual
4  allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S.
5  at 555 (internal citations and parentheticals omitted).

6  In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true
7  and construe them in the light most favorable to the plaintiff. *See id*. at 550; *Erickson v. Pardus*, 551
8  U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007).

9  If the court dismisses the complaint, it should grant leave to amend even if no request to amend
10  is made "unless it determines that the pleading could not possibly be cured by the allegation of other
11  facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*quoting Cook, Perkiss and Liehe, Inc.*
12  *v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)). But when a party
13  repeatedly fails to cure deficiencies, the court may order dismissal without leave to amend. *See*
14  *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (affirming dismissal with prejudice where
15  district court had instructed *pro se* plaintiff regarding deficiencies in prior order dismissing claim
16  with leave to amend).

## IV. DISCUSSION

18  As the court stated in its previous order, Title VII provides that:

19  It shall be an unlawful employment practice for an employer—

20  (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or
21  privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

23  (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such
24  individual's race, color, religion, sex, or national origin.

25  42 U.S.C. § 2000e-2(a). "The emphasis of both the language and the legislative history of the
26  statute is on eliminating discrimination in employment; similarly situated employees are not to be
27  treated differently solely because they differ with respect to race, color, religion, sex, or national

1 origin." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 71 (1977). "This is true regardless of
2 whether the discrimination is directed against majorities or minorities." *Id*. at 71-72; *see McDonald*
3 *v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 278-80 (1976) (the protections of Title VII apply to
4 minority and non-minority employees alike).

5     Essentially, Mr. Hilber contends that he was treated differently because of his race. "A person
6 suffers disparate treatment in his employment when he or she is singled out and treated less
7 favorably than others similarly situated on account of race" or another protected characteristic.
8 *Cornwell v. Electra Central Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006). Ultimately, Mr.
9 Hilber must sufficiently show that (1) he is member of a protected class, (2) he was qualified by his
10 position and was performing satisfactorily, (3) he was subjected to an adverse employment action,
11 and (4) he was similarly situated to individuals outside the protected class who were treated more
12 favorably. *See Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004); *Aragon v.*
13 *Republic Silver State Disposal Co.*, 292 F.3d 654, 658 (9th Cir. 2002).[5] And while Mr. Hilber's

---

[5] ILT contended in its motion to dismiss Mr. Hilber's original complaint that the first element should be modified because Mr. Hilber is a non-minority plaintiff. First Motion, ECF No. 10 at 3. Although the Ninth Circuit has held that discrimination cases brought by non-minority plaintiffs "fit [ ] within the analytic framework established in *McDonnell Douglas Corp. v. Green*," *Higgins v. Vallejo*, 823 F.2d 351, 355 (9th Cir. 1987), it has also noted the Circuit-split about whether courts should modify the first *McDonnell Douglas* element that the plaintiff "belongs to a racial minority" when analyzing such discrimination claims. *See Zottola v. City of Oakland*, 32 Fed. Appx. 307, 310, 2002 WL 463695, at *2 (9th Cir. 2002) (citing *Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001); *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 426 (5th Cir. 2000); *Bass v. Board of County Commissioners*, 256 F.3d 1095, 1103-04 (11th Cir. 2001); *Mills v. Health Care Serv. Corp.*, 171 F.3d 450, 457 (7th Cir. 1999); *Duffy v. Wolle*, 123 F.3d 1026, 1036 (8th Cir. 1997); *Murray v. Thistledown Racing Club, Inc.*, 770 F.2d 63, 67 (6th Cir. 1985); *Notari v. Denver Water Dep't*, 971 F.2d 585, 589 (10th Cir. 1992)). *See also Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 851-52 (D.C. Cir. 2006). Some of these courts modify the first *McDonnell Douglas* element and require a non-minority plaintiff to allege "background circumstances" that show that the defendant is the unusual employer who discriminates against the majority. *See*, *e.g.*, *Mastro*, 447 F.3d at 851-52. Others do not modify the *McDonnell Douglas* element and require a non-minority plaintiff simply to allege that he or she is a member of a protected group, and those courts note that Caucasians are a protected group. *See*, *e.g.*, *Byers*, 209 F.3d at 426. The Ninth Circuit has yet to weigh in on this debate. *See Zottola*, 32 Fed. Appx. at 310, 2002 WL 463695, at *2. As such, the court will apply the traditional, non-modified *McDonnell Douglas* elements until the Ninth Circuit has a chance to

employment discrimination complaint need not contain specific facts fully establishing a *prima facie* case, it "must contain only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Swierkievicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002) (quoting Fed. R. Civ. P. 8(a)(2)); *see Twombly*, 550 U.S.at 569-70 (discussing *Swierkievicz* and explicitly not abrogating it).

The few allegations in Mr. Hilber's original complaint did not meet this standard. The court explained in its 5/18/2012 Order why they did not:

> Here, Mr. Hilber sufficiently alleges that he belongs to a protected class (Caucasian), but he fails to sufficiently allege facts to give rise to a plausible claim for employment discrimination.[] For example, Mr. Hilber alleges that ILT hired him on May 6, 2008 to perform work in Sonoma County, California, but he does not allege whether he was hired as a full-time or temporary employee, nor does he describe the work he was hired to perform. *See generally* Complaint, ECF No. 10.[] Simply put, without knowing what his position was, the court cannot, even at a high level, determine whether he was satisfactorily performing its required tasks. Mr. Hilber at one point alleges that he was denied an opportunity to "seam material," but the court has no idea if Mr. Hilber was hired, or was qualified, to do that. The court faces the same problem with respect to Mr. Hilber's claim that he was denied an opportunity to participate in "leak testing of the installed liner.
>
> Similarly, Mr. Hilber alleges that he was terminated by ILT on May 15, 2008, but the court has no way of determining whether this was an adverse employment action because Mr. Hilber never alleged the terms of his employment.[] For example, Mr. Hilber alleges that he was sent home early on May 7, 2008 and that he was denied the opportunity to work on May 10, 2008, but without knowing the terms of Mr. Hilbert's employment, the court cannot determine whether Mr. Hilber was supposed to have been able to work on those days.
>
> Mr. Hilber also has not alleged that any "similarly situated" ILT employees who were treated differently than he was.[] Generally, in the Ninth Circuit, "individuals are similarly situated when they have similar jobs and display similar conduct." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003). His allegations suggest that ILT's non-white, Hispanic employees were able to "seam material" and conduct "leak testing of the installed liner" and were given the opportunity to work full days on May 7, 2008 and May 10, 2008, but he does not allege that he had a similar job or responsibilities to these non-white, Hispanic employees had or that he possessed similar training and experience to theirs. Without such allegations, the court cannot determine whether ILT inappropriately favored its non-white, Hispanic employees to him.

---

address this issue. *See Lemnitzer v. Philippine Airlines, Inc.*, 816 F. Supp. 1441, 1448 (N.D. Cal. 1992) (Jensen, J.), *aff'd in part*, *rev'd in part on other grounds and remanded*, 52 F.3d 333, 1995 WL 230404 (9th Cir., Apr. 18, 1995) (table, unpublished decision) (noting its support for the modified element but applying traditional one because the Ninth Circuit had not decided the issue); *see also Engler v. City of San Jose*, 1995 WL 767816, at *5 (N.D. Cal. Dec. 21, 1995) (applying traditional *McDonnell Douglas* element).

C 12-00003 LB
ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO. DISMISS

8

5/18/2012 Order, ECF No. 24 at 5-7 (footnotes omitted).

Mr. Hilber added more allegations (summarized above) in his First Amended Complaint, and these new allegations are aimed at addressing the court's previously described concerns. *See generally* FAC, ECF No. 30. In its motion to dismiss, ILT simply argues that those allegations still are not sufficient. *See* Second Motion, ECF NO. 32 at 3-4. It contends that "the First Amended Complaint is again totally devoid of any information or allegations of the terms and conditions of [Mr. Hilber's] employment, job duties, quality of performance of his job duties, adverse employment action or favorable treatment given to those to be similarly situated." *Id*. at 3. Instead, it claims, "the only facts that can be gleaned from [the] First Amended Complaint are that he was a journeyman laborer and that at some point in time [he] was returned to 'filling sand bags and picking up trash.'" *Id*. (citations omitted). ILT also argues that Mr. Hilber fails to allege that seaming material and testing leaks were within the scope of his employment. *Id*. at 4.

While Mr. Hilber's First Amended Complaint does not contain specific facts fully establishing a *prima facie* case, it does not need to. Rather, it "must contain only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Swierkievicz*, 534 U.S. at 508 (quoting Fed. R. Civ. P. 8(a)(2)); *see Twombly*, 550 U.S.at 569-70. And the court believes that he has done so. As described above, Mr. Hilber now has alleged that he was hired as a "Journeyman Laborer" from the Laborers Local 139 Hall, that he was not told of any problems with his job performance, that Hispanic laborers hired from Laborers Local 139 Hall got to participate in seaming material and leak testing while Caucasian laborers (including him) hired from it did not, and that this resulted in his having to do less important and more menial tasks. He also alleges that he was sent home early one day and was not given work on another day even though other laborers did work those days. It simply is not accurate to say, as ILT does, that Mr. Hilber's First Amended Complaint is 'totally devoid" of these allegations.

To be sure, Mr. Hilber's case is not airtight—not by a long-shot. For example, there are still questions about the exact terms of his employment (e.g., whether he was hired as a full-time or temporary employee), about whether he has any reason to expect that he would be employed for the

second project, about whether assisting the general contractor for a relatively small amount of time is adverse employment action, and about why he should be entitled to the damages he seeks. ILT also may be able to articulate a legitimate, non-discriminatory reason for the challenged actions, which would require Mr. Hilber then to show that the articulated reasons is pretextual either directly by persuading the court that a discriminatory reason more likely motivated ILT or indirectly by showing that the ILT's proffered explanation is unworthy of credence. *See Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1123-24 (9th Cir. 2000) (applying the *McDonnell Douglas* burden-shifting framework for an employment discrimination claim). But these issues are to be resolved at the summary judgment stage. For now, the court believes Mr. Hilber has put forth enough allegations to state a claim to relief that is plausible on its face to put ILT on notice of that claim, and that is all that is required. *See Twombly*, 550 U.S. at 570.

## V. CONCLUSION

Based on the foregoing, the court **GRANTS IN PART** and **DENIES IN PART** ILT's motion. It is **GRANTED** to the extent that it seeks dismissal of Mr. Hilber's possibly-alleged claim for violation of 8 U.S.C. § 1324a, and this claim is **DISMISSED WITH PREJUDICE**. ILT's motion is **DENIED** in all other respects. Pursuant to Federal Rule of Civil Procedure 12(a)(4)(A), ILT shall answer Mr. Hilber's First Amended Complaint within 14 days of the date of this order.

This disposes of ECF No. 32.

**IT IS SO ORDERED.**

Dated: July 24, 2012

_____
LAUREL BEELER
United States Magistrate Judge